**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **BROOKA STOKES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO. 3:06CV1135-MHT** |
| **CITIFINANCIAL a/k/a WASHINGTON** | ) | |
| **MUTUAL FINANCE and GLENDA DUNCAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**DEFENDANTS' MOTION TO STAY ACTION PENDING RESOLUTION OF
DEFENDANT CITIFINANCIAL, INC.'S PETITION FOR ORDER COMPELLING
ARBITRATION AND MEMORANDUM IN SUPPORT THEREOF**

**COME NOW,** Defendants CitiFinancial, Inc. ("CitiFinancial") and Glenda Duncan ("Duncan") (collectively "Defendants"), by and through their undersigned counsel, appearing specially so as to preserve any and all defenses available under Rule 12 of the Federal Rules of Civil Procedure, any and all defenses under the federal laws of bankruptcy and specifically preserving the right to demand arbitration (which Defendants have exercised) pursuant to contractual agreements and the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, and hereby moves this honorable Court for an Order staying this case pending the outcome of CitiFinancial's Petition for Order Compelling Arbitration, filed in the United States District Court for the Middle District of Alabama. In support thereof, Defendants state as follows:

1.    On March 10, 2003, Plaintiff Brooka Stokes ("Stokes") entered into a loan transaction and arbitration agreement with CitiFinancial Corporation, LLC, a corporate affiliate of Plaintiff CitiFinancial, Inc. In the arbitration agreement, Stokes agreed to arbitrate any claims

against CitiFinancial Corporation, LLC, as well as any claims against CitiFinancial Corporation, LLC's past, present or future respective affiliates and their respective employees, including claims she may have regarding any credit transaction. (A copy of the parties' arbitration agreement is attached hereto as Ex. 1.)

2.    On November 16, 2006, Stokes filed a lawsuit against CitiFinancial f/k/a Washington Mutual Finance[1] and an employee, Duncan, in the Circuit Court of Lee County, Alabama, CV-06-761 (the "Underlying Action"). In the Underlying Action, Stokes set forth claims of defamation, fraud, negligent misrepresentation and intentional infliction of emotional distress based upon Defendants' alleged misrepresentation, improper credit reporting and collection activities associated with a loan Stokes obtained from CitiFinancial. Stoke's claims are subject to the parties' March 10, 2003 arbitration agreement and should have been pursued through an arbitration forum in accordance with the agreement.

3.    On December 22, 2006, Plaintiff removed the Underlying Action to the United States District Court for the Middle District of Alabama, Eastern Division, on the basis of diversity jurisdiction, where it was assigned case no. 3:06CV1135-MHT. The case was removed on diversity jurisdiction because Stokes fraudulently and improperly joined Duncan as a defendant is the Underlying Action. No possibility for a cause of action exists against Duncan and, thus, she has been fraudulently joined by Stokes with CitiFinancial for the sole purpose of attempting to avoid and defeat diversity jurisdiction.

4.    On January 17, 2006, CitiFinancial petitioned the United States District Court for the Middle District, pursuant to Sections 2, 3 & 4 of the Federal Arbitration Act ("FAA"), to enter an Order directing Stokes to submit any and all claims against CitiFinancial and Duncan,

---

[1] CitiFinancial, Inc. is the successor by merger to Washington Mutual Finance, LLC.

including the claims in this action, to arbitration, in accordance with the parties' agreement to do so. *See CitiFinancial, Inc. v. Stokes*, 3:07CV55 (M.D. Ala.). (A copy of CitiFinancial's Petition for Order Compelling Arbitration is attached hereto as Ex. 2). In its Petition, CitiFinancial further requests that the Court enter an Order enjoining Stokes from prosecuting all claims in this action to protect and effectuate the Court's judgment. The Court's ruling on CitiFinancial's Petition is pending.

5. Should this case continue it would be against the parties' contractual agreement to arbitrate these very types of disputes and potentially a waste of judicial resources.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully requests, in the interest of judicial economy, that this Court enter an order staying all proceedings in this action, including discovery, pending the Court's ruling on CitiFinancial's Petition.

Dated this the 19th day of January, 2007.

Respectfully submitted,

s/ Alan D. Leeth
Reid S. Manley(MAN039)
Alan D. Leeth (LEE038)

Attorneys for Defendants
CITIFINANCIAL, INC. AND GLENDA DUNCAN

**OF COUNSEL:**

BURR & FORMAN LLP
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of January, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all properly registered parties and to the extent they are not registered with the Court's ECF system, they have been served by directing same to their office addresses via first-class, United States mail, postage prepaid:

Hon. James T. Gullage
Jeffrey G. Tickal
GULLAGE & TICKAL, LLP
511 Geneva Street
Opelika, AL 36801
Tel.: (334) 737-3733

s/ Alan D. Leeth
OF COUNSEL

## ARBITRATION AGREEMENT

THIS ARBITRATION AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND CERTAIN OTHER PERSONS ON THE ONE HAND AND LENDER AND CERTAIN OTHER PERSONS AND ENTITIES ON THE OTHER HAND, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.

| BORROWER(S) | LENDER |
|---|---|
| BROOKA FERN STOKES<br><br>3301 OAKDALE DR<br>OPELIKA AL 36801 | CITIFINANCIAL<br>CORPORATION, LLC<br>3909-B PEPPERELL PARKWAY<br>OPELIKA AL 36801 |
| Date of Note   03/10/2003 | Account Number   133280 |

In consideration of Lender making the extension of credit described in the instrument evidencing your Loan ("Note") and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.

Definitions for Arbitration Agreement. As used in this Arbitration Agreement ("Agreement"), the following definitions will apply:
"You" or "Your" means any or all of Borrower(s) listed above and Non-Obligor(s) who execute the Note, and their heirs, survivors, assigns, and representatives.
"We" or "Us" or "Our" means the Lender under the Note listed above, its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective employees, agents, directors, and officers (whether acting in their corporate or individual capacity).
"Credit Transaction" means any one or more past, present, or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.
"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to:

- The Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

"Rules" means the then applicable rules and procedures that govern consumer disputes for the chosen "Administrator" (as defined below).

Agreement to Arbitrate Claims. Upon written request by either party that is submitted according to the Rules for arbitration, any Claim, except those specified below in this Agreement, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the then applicable Rules of the chosen "Administrator", and (iii) this Agreement, unless We and You both agree in writing to forgo arbitration. The terms of this Agreement shall control over any inconsistency between the Rules of the Administrator and this Agreement. The party initiating the arbitration must choose one of the three following arbitration firms ("Administrator") and follow the Rules for initiating and pursuing an arbitration:

| JAMS | American Arbitration Association | National Arbitration Forum |
|---|---|---|
| 1920 Main Street, Suite 300 | 335 Madison Avenue, Floor 10 | P.O. Box 50191 |
| Irvine, CA 92610 | New York, NY 10017-4605 | Minneapolis, MN 55405 |
| www.jamsadr.com | www.adr.org | www.arbitration-forum.com |

You may obtain a copy of the Rules and a form of demand for arbitration for each Administrator by contacting the Administrator or by accessing the Administrator's internet site. We or You may bring an action, including a summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claim pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if a Claim is part of a lawsuit, up until the entry of a final judgment. You and We agree to submit to final, binding arbitration not only all Claims, but also any claim or dispute You or We have against (i) all persons and/or entities involved with any Credit Transaction or any other matter relating to this Disclosure Statement, Note and Security Agreement, (ii) all persons and/or entities who signed or executed any document relating to any Credit Transaction or Claim, and (iii) all persons and/or entities who may be jointly or severally liable to either You or any of Us regarding any Claim.

Judgment. Judgment upon any arbitration award may be entered in any court having jurisdiction. If timely requested by either party, the arbitrator shall provide a brief written statement of the reasons for any award.

Claims Excluded from Arbitration. Neither You nor We may require the other to arbitrate the following types of matters:
- Any action to the extent necessary to obtain a judicial order for the purpose of (a) effecting a foreclosure or transferring title being foreclosed, or permitting exercise of extra-judicial or self-help repossession under applicable law, with respect to an interest in property, or (b) establishing, perfecting or clearing title, with respect to an interest in property;
- Any Claim where all parties collectively (including multiple named parties) seek monetary relief in the aggregate of $15,000.00 or less in total relief, including but not limited to compensatory, statutory and punitive damages, restitution, rescission, disgorgement, costs and fees (including attorneys' fees); or any Claim brought in and subject to the jurisdiction of a small claims court, so long as such matter remains in such court and advances only an individual, non-class Claim. Any Claim asserted on behalf of a putative class of persons, will, for purposes of this exclusion, be deemed to exceed $15,000.00. In the event that any party fails to specify the amount being sought for any relief, or any form or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000.00, unless the matter remains in and subject to the jurisdiction of the small claims court.

Participating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim

Additional Terms.
Administration of Arbitration. Arbitration shall be administered by the chosen Administrator, but if said Administrator is unable or unwilling to administer the arbitration, then an alternate Administrator shall be chosen by the party initiating the arbitration and that Administrator shall administer any arbitration required under this Agreement under its Rules. The arbitrator shall make his or her decision in accordance with the applicable law, and shall be empowered to award any damages or other relief provided for under the applicable law.
Place of Arbitration. The arbitration shall be conducted in the county of Your residence, unless all parties agree to another location.
Appeal. Either You or We may appeal the arbitrator's award in accordance with the then applicable Optional Appeals Procedures of JAMS or in accordance with procedures otherwise agreed to by You and Us, and the award may be subject to judicial review on the grounds stated in 9 U.S.C. § 10.
No Class Actions/No Joinder of Parties. You agree that any arbitration proceeding will only consider Your Claims. Claims by or on behalf of other borrowers will not be arbitrated in any proceeding that is considering Your or Our Claims. Because You have agreed to arbitrate all Claims, You may not serve as a class representative or participate as a class member in a putative class action against any party entitled to compel arbitration under this Agreement.
Depositions. After a demand for arbitration is made, You and We may conduct a limited number of depositions by mutual agreement. Any disagreements concerning the taking of depositions will be resolved by the arbitrator.

21228-2  3/2003                    Original (Branch)         Copy (Customer)                    Borrower's Initials: _BJS_  ___ ___



**Costs.** Unless the Rules of the Administr... ...equire allocation more beneficial to You, the c... of any arbitration proceeding shall be divided as follows:

- The party making demand upon the Administrator for arbitration shall pay to the Administrator the filing fee required by the Rules when the demand is made, except that We will pay the amount of the filing fee in excess of the amount of the fee that would be required for You to file a lawsuit in Your jurisdiction. In addition, We will pay to the Administrator all other administrative costs of the arbitration proceeding. However, the arbitrator may award Us, in accordance with Rules, the excess amount of any such filing fee and any other arbitration administrative costs We incur if the arbitrator determines that the Claim was made in bad faith or lacks any justification on Your part. Despite our agreement to pay costs and fees described above, you have the option to pay Your share of filing fees and administrative costs consistent with the applicable Rules.
- Each party shall pay his/her own attorney, expert, and witness fees and expenses, unless otherwise required by law or by other terms of the Note.

**Governing Law.** This Agreement is governed by federal law and by the laws of the state where the closing of the Credit Transaction took place, but only to the extent that such state laws are consistent or compatible with federal law.

**Interpretation.** Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of this Agreement under which arbitration is sought, shall be submitted to and ruled on by the arbitrator, unless the relevant law requires that a court of competent jurisdiction make such determinations. The arbitrator has the authority to determine jurisdiction and arbitrability prior to conducting a full hearing on the merits.

**Severability.** If the arbitrator or any court determines that one or more terms of this Agreement or the Rules are unenforceable, or would make this Agreement unenforceable, only such terms(s) shall be deemed unenforceable and shall be deemed stricken from this Agreement, but such determination shall not impair or affect the enforceability of the other terms of this Agreement or the Rules.

**Survival.** This Agreement applies even if the Note has been paid in full, charged off by us, or discharged in bankruptcy.

**Special Acknowledgments.** You understand and acknowledge by signing Your name to this Agreement that (i) a court and/or jury will not hear or decide any Claim governed by this Agreement, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§1 et seq., as amended, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, and (iv) rights to appeal an arbitration award are very limited.

**READ THE ABOVE ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION. BY SIGNING BELOW, YOU AGREE TO THE TERMS CONTAINED IN THIS AGREEMENT AND ACKNOWLEDGE THAT THIS DOCUMENT DID NOT CONTAIN ANY BLANK SPACES WHEN YOU SIGNED IT.**

The Arbitration Agreement is executed as of the "Date of Note" written above.

_Brooka Fern Stokes_
BROOKA FERN STOKES                          Borrower

By: _Renee Booth, A M_
(Lender Name and Title)                     Borrower

Non-Obligor

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

*RECEIVED*

*2007 JAN 17 P 1: 02*

*DEBRA P. HACKETT, CLK*
*U.S. DISTRICT COURT*
*MIDDLE DISTRICT ALA*

| | | |
|---|---|---|
| CITIFINANCIAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:07 CV 55-WHA |
| | ) | |
| BROOKA F. STOKES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PETITION FOR ORDER COMPELLING ARBITRATION

COMES NOW Plaintiff CitiFinancial, Inc., by and through its undersigned counsel, and hereby petitions this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2, 3 & 4, to enter an order directing Defendant Brooka Stokes ("Stokes" or "Defendant") to submit any and all claims against Plaintiff, and its employee, to arbitration, in accordance with the parties' agreement to do so. As grounds for this Petition, Plaintiff would show the following:

### I.   INTRODUCTION

1.     This is a Petition to Compel Arbitration, brought under Sections 2, 3, and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. Section 4 of the FAA provides a mechanism by which federal district courts are empowered to enforce agreements to arbitrate, regardless of where the lawsuit between the parties is pending. In this action, Plaintiff seeks an Order compelling Stokes to submit to binding arbitration any and all claims she may have against Plaintiff, and its employee, pursuant to the parties' arbitration agreement.

2.     On March 10, 2003, Stokes entered into a loan transaction and arbitration agreement with CitiFinancial Corporation, LLC, a corporate affiliate of Plaintiff CitiFinancial,

EXHIBIT
2
tabbies

Inc. In the arbitration agreement, Stokes agreed to arbitrate any claims against CitiFinancial Corporation, LLC, <u>as well as any claims against CitiFinancial Corporation, LLC's past, present or future respective affiliates and their respective employees, including claims she may have regarding any credit transaction.</u>

3.     On November 16, 2006, Stokes filed a lawsuit against CitiFinancial, Inc. f/k/a Washington Mutual Finance[1] and an employee, Glenda Duncan ("Duncan"), in the Circuit Court of Lee County, Alabama, CV-06-761 (the"Underlying State Court Action"). (*See* Complaint, attached hereto as Ex. A.) In the Underlying State Court Action, Stokes set forth claims of defamation, fraud, negligent misrepresentation and intentional infliction of emotional distress based upon Plaintiff's alleged misrepresentation, improper credit reporting and collection activities associated with a loan Stokes obtained from CitiFinancial, Inc.

4.     On December 22, 2006, Plaintiff removed the Underlying State Court Action to the United States District Court for the Middle District of Alabama, Eastern Division, on the basis of diversity jurisdiction, where it was assigned case no. 3:06CV1135-T (the "Underlying Federal Court Action"). The case was removed on diversity jurisdiction because Stokes fraudulently and improperly joined Duncan as a defendant is the Underlying State Court Action. No possibility for a cause of action exists against Duncan and, thus, she has been fraudulently joined by Stokes with CitiFinancial, Inc. in the Underlying Action for the sole purpose of attempting to avoid and defeat diversity jurisdiction.

5.     Because Stokes agreed to arbitrate claims against CitiFinancial Corporation, LLC and its affiliates and employees -- including Plaintiff CitiFinancial, Inc. and Glenda Duncan --

---

[1] CitiFinancial, Inc. is the successor by merger to Washington Mutual Finance, LLC.

Plaintiff requests that this Court order Stokes to arbitrate the claims filed in the Underlying

Actions, pursuant to the parties' arbitration agreement.

## II.    PARTIES, JURISDICTION AND VENUE

6.    This Court has jurisdiction over this Petition pursuant to the diversity statute, 28

U.S.C. § 1332, and Section 4 of the FAA.

7.    Plaintiff CitiFinancial, Inc. is a Maryland corporation with its principal place of

business also located in the State of Maryland.    Therefore, Plaintiff is a resident of the State of

Maryland.    28 U.S.C. § 1332(c)(1).

8.    Defendant Stokes is a resident citizen of the State of Alabama.

9.    Based on the foregoing averments, there is complete diversity of citizenship

between all parties.    28 U.S.C. § 1332(a), (c).

10.    The amount in controversy in this action exceeds $75,000, exclusive of interest

and costs.    The amount in controversy in a Petition to Compel Arbitration is determined by

reference to the amount in issue in the Underlying Action on the claims subject to arbitration.

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 n.32 (1983) ("[S]ection 4

provides for an order compelling arbitration only where the federal district court would have

jurisdiction over a suit on the underlying dispute"); *accord We Care Hair Development, Inc. v.*

*Engen*, 180 F.3d 838, 840-41 (7th Cir. 1999); *Webb v. Investacorp.*, 89 F.3d 252 (5th Cir. 1996).

11.    The amount in controversy in this case is well over $75,000, exclusive of interest

and costs, as Stokes seek an unlimited amount of compensatory and punitive damages in the

Underlying Action.    Indeed, punitive damages awarded in Alabama fraud actions frequently

exceed $75,000.    *See Jeter v. Orkin Exterminating Co.*, *supra*, ($2,000,000 punitive damages

awarded in fraud and breach of contract matter); *Johns v. A.T. Stephens Enterprises, Inc.*, 815

So. 2d 511 (Ala. 2001) ($150,000.00 punitive damage award in conspiracy to convert matter); *Travelers Indemnity Co. of Illinois v. Griner*, 809 So. 2d 808 (Ala. 2001) ($200,000.00 punitive damage award in fraud and outrage matter); *Sparks v. Cash America International, Inc.*, 789 So. 2d 231 (Ala. 2000) ($225,000 award of punitive damages in fraud and breach of contract matter); *Cooper & Co. v. Lester*, 832 So. 2d 628 (Ala. 2000) (punitive damage awards ranging from $178,538.00 to $250,000.00 in fraud action); *Prudential Ballard Realty Co. v. Weatherly, supra*, (award of $750,000.00 of punitive damages in fraud action); *Chrysler Corp. v. Schiffer*, 736 So. 2d 538 (Ala. 1999) ($150,000.00 award of punitive damages in fraud and breach of contract matter); *Life Insurance Company of Georgia v. Parker*, 726 So. 2d 619 (Ala. 1998) ($150,000.00 award of punitive damages in insurance fraud matter); *Patel v. Patel*, 708 So. 2d 159 (Ala. 1998) ($225,000.00 award of punitive damages in fraud and breach of contract matter); *Talent Tree Personnel Srvs., Inc. v. Fleenor*, 708 So. 2d 917 (Ala. 1997) ($1,500,000.00 award of punitive damages in fraud and breach of contract matter); *American Pioneer Life v. Williamson*, 704 So. 2d 1361 (Ala. 1997) ($750,000.00 award of punitive damages in fraud and breach of contract case); *Union Sec. Life Ins. Co. v. Crocker*, 709 So. 2d 1118 (Ala. 1997) ($1,000,000.00 award of punitive damages in insurance fraud matter); *Life Ins. Co. of Georgia v. Johnson*, 725 So. 2d 934 (Ala. 1998) ($3,000,000.00 award of punitive damages in insurance fraud action); *Hillcrest Center, Inc. v. Rone*, 711 So. 2d 901 (Ala. 1997) ($94,000.00 award of punitive damages in fraudulent inducement action); *First Commercial Bank v. Spivey*, 694 So. 2d 1316 (Ala. 1997) ($500,000.00 award of punitive damages in fraud and breach of contract matter); *Carlisle v. Whirlpool Fin. Nat'l Bank*, No. 97-068 (Circuit Court of Hale County, Alabama), (the jury awarded the Plaintiff punitive damages in the amount of approximately $582 million in a case in which fraud allegations were asserted. The amount of punitive damages was later remitted to

1531657

4

$300 million.); *Gallant v. Prudential Ins. Co. of America* , CV-93-50, 1994 WL 180709 (LRP

JURY) (awarding $33,000,000 in punitive damages); *Ford Motor Co. v. Sperau,* 708 So. 2d 111

(Ala. 1997) ($1,792,000 in punitive damages); *Johnson v. Mercury Finance Co.,* CV-93-52, in

the Circuit Court of Barbour County, Alabama, Clayton Division (Plaintiff, buyer of used cars,

alleged that defendant fraudulently failed to disclose a $1,000 discount for which defendant

purchased the non-recourse note.   Jury awarded $90,000 in compensatory damages, and

$50,000,000 in punitive damages.  The award of punitive damages was remitted to $2,000,000.);

*Key v. Prudential Insurance Co., et al.,* CV-93-479, in the Circuit Court of Marshall County,

Alabama (August 28, 1995) (The Plaintiff alleged that the insurance agent misrepresented that no

additional premium payments would be required.   Jury awarded $25,000,000 in punitive

damages.); *Foremost Insurance Co. v. Parham,* 693 So. 2d 409 (Ala. 1997) (Jury awarded

$6,000 in compensatory damages, and $7,500,000 in punitive damages.  The punitive damages

were later remitted to $175,000.).

     12.    In addition, fraud actions in Alabama have often resulted in substantial recoveries

for mental anguish, emotional distress, and other similar harms well exceeding the $75,000

required for diversity jurisdiction.  *See Prudential Ballard Realty Co. v. Weatherly*, 792 So. 2d

1045 (Ala. 2000) ($250,000 compensatory damage award, mostly attributable to mental anguish,

in fraud matter); *Jeter v. Orkin Exterminating Company, Inc.*, 832 So. 2d 25 (Ala. 2001)

($300,000 mental anguish awarded in fraud and breach of contract matter); *Oliver v. Towns*, 770

So. 2d 1059 (Ala. 2000) ($67,800 metal anguish award); *Sparks v. Cash America International,*

*Inc.*, 789 So. 2d 231 (Ala. 2000) (in fraud and breach of contract claim, $50,000.00 of the

$75,000.00 compensatory damage award was attributed to mental anguish); *Liberty National Life*

*Ins. Co. v. Caddell*, 701 So. 2d 1132 (Ala. 1997) (awarding $50,000 in compensatory damages

for mental anguish resulting from alleged conversion); *Hare v. Mutual Savings Life*, CV-94-529, 1997 WL 743899 (LRP JURY) (awarding $500,000 in compensatory damages for alleged insurance fraud where primary injury was emotional distress); *Mallard v. Countrywide Funding Corp.*, CV-95-199, 1997 WL 743898 (LRP JURY) (awarding $1,000,000 in compensatory damages to two Plaintiffs for emotional distress caused by fraud); *Ball v. ALFA Realty, Inc.*, CV-95-103, 1997 WL 850611 (LRP JURY) (awarding $100,000 in compensatory damages for emotional distress suffered as a result of fraud); *Norwood v. Glen Lanes Realty Co.*, CV-96-391, 1997 WL 996325 (LRP JURY) (awarding $200,000 in compensatory damages for emotional distress resulting from fraud); *Gallant v. Prudential Ins. Co. of America*, CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $430,000 in compensatory damages for alleged insurance fraud); *Sperau v. Ford Motor Co.*, CV-91-34, 1994 WL 180700 (LRP JURY) (awarding $4,492,000 in compensatory damages to four Plaintiffs for emotional distress allegedly caused by fraud).

13.     Based on the foregoing, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. Further, this action is specifically authorized by Section 4 of the FAA, 9 U.S.C. § 4.

14.     Venue is proper in this district and division. Stokes entered into the March 10, 2003 loan containing the arbitration agreement in Opelika, Alabama, and Stokes filed the Underlying State Court Action in the Circuit Court of Lee County, Alabama. Therefore, venue is proper in this district and division because the acts and events giving rise to the Underlying Action occurred in this district and division.

### III.    FACTUAL AVERMENTS

15.    In her lawsuit filed in the Circuit Court of Lee County, Alabama, Stokes assert claims against CitiFinancial, Inc. based on a loan transaction she entered into prior to September 27, 2004. Stokes' claims against CitiFinancial, Inc. are based upon injuries resulting from the alleged publication of and representation to the credit bureau of false and defamatory statements concerning Stokes. Stokes also seeks damages based on CitiFinancial, Inc.'s alleged harassment of Stokes by way of telephone calls and correspondence concerning her loan with CitiFinancial, Inc. Stokes purports to set forth claims of defamation, fraud, negligent misrepresentation and intentional infliction of emotional distress based upon CitiFinancial, Inc.'s alleged misrepresentation, improper credit reporting and collection activities associated with a loan Stokes obtained from CitiFinancial, Inc. Based upon the foregoing claims, Stokes seeks an unlimited amount of amount of compensatory and punitive damages, as well as attorney fees and costs.

16.    On March 10, 2003, Stokes entered into a loan transaction with CitiFinancial Corporation, LLC, and in connection with the loan transaction, she executed an arbitration agreement. (A true and correct copy of Stokes' Disclosure Statement, Note and Security Agreement and Arbitration Agreement are attached hereto as Ex. B.) In the arbitration agreement, Stokes agreed to arbitrate claims against CitiFinancial Corporation, LLC, its affiliates and employees regarding any past, present or future credit transaction. It provides, in relevant part:

### ARBITRATION AGREEMENT

**THIS ARBITRATION AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND CERTAIN OTHER PERSONS ON THE ONE HAND AND LENDER AND CERTAIN OTHER PERSONS AND ENTITIES ON THE OTHER HAND, EXCEPT THOSE SPECIFIED**

**BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.**

In consideration of Lender making the extension of credit in the instrument evidencing your loan ("Note") and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.

**Definitions for Arbitration Agreement.** As used in this Arbitration Agreement ("Agreement"), the following definitions will apply:

"You" or "Your" means any or all of Borrower(s) listed above and Non-Obligor(s) who execute the Note, and their heirs, survivors, assigns, and representatives.

"We" or "Us" or "Our" means the Lender under the Note listed above, its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective employees, agents, directors, and officers (whether acting in their corporate or individual capacity).

"Credit Transaction" means any one or more past, present, or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.

"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to:

- The Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;

- Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

\* \* \*

**Agreement to Arbitrate Claims.** Upon written request by either party that is submitted to the Rules for arbitration, any Claim, except those specified below in this Agreement, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act . . . .

\* \* \*

**Claims Excluded from Arbitration.** Neither you nor We may require the other to arbitrate the following types of matters:

- Any action to the extent necessary to obtain a judicial order for the purpose of (a) effecting a foreclosure or transferring title being foreclosed, or permitting exercise of extra-judicial or self-help repossession under applicable law, with respect to an interest in property, or (b) establishing, perfecting or clearing title, with respect to an interest in property.

- Any Claim where all parties collectively (including multiple named parties) seek monetary relief in the aggregate of $15,000.00 or less in total relief, including but not limited to compensatory, statutory and punitive damages, restitution, rescission, disgorgement, costs and fees (including attorneys' fees); or any Claim brought in and subject to the jurisdiction of a small claims court, so long as such matter remains in such court and advances only an individual, non-class Claim. Any Claims asserted on behalf of a putative class of persons, will, for purposes of this exclusion, be deemed to exceed $15,000.00. In the event that any party fails to specify the amount being sought for any relief, or any form or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000.00, unless the matter remains in and subject to the jurisdiction of the small claims court.

Participating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim.

1531657

9

* * *

**Special Acknowledgments.  You understand and acknowledge by signing
Your name to this Agreement that (i) a court and/or jury will no hear or
decide any Claim governed by this Agreement, (ii) the funding for Your
Credit Transaction will come in whole or in part from sources outside this
state, which will involve commerce within the meaning of the United States
Arbitration Act, 9 U.S.C. §§ et seq., as amended, (iii) discovery in an
arbitration proceeding can be much more limited than in a court proceeding,
and (iv) rights to appeal an arbitration award are very limited.**

**READ THE ABOVE ARBITRATION AGREEMENT CAREFULLY.  IT
LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO
OBTAIN REDRESS THROUGH COURT ACTION.   BY SIGNING
BELOW, YOU AGREE TO THE TERMS CONTAINED IN THIS
AGREEMENT AND ACKNOWLEDGE THAT THIS DOCUMENT DID
NOT CONTAIN ANY BLANK SPACES WHEN YOU SIGNED IT.**

(*See* Arbitration Agreement, Ex. B.)

17.    CitiFinancial, Inc. is an affiliate of CitiFinancial Corporation, LLC and Duncan is

an employee of CitiFinancial Corporation, LLC.

18.    Furthermore, the March 10, 2003 loan transaction involved interstate commerce.

CitiFinancial Corporation, LLC is a Delaware limited liability company.    CitiFinancial

Corporation, LLC is in the business of making consumer loans, and all of its loan operations

necessarily involve interstate commerce.  CitiFinancial Corporation, LLC funds its loans made in

Alabama, including Stokes' loan, with capital sources from outside the State of Alabama.  When

a CitiFinancial Corporation, LLC loan transaction is closed, the customer is given a check,

representing the loan proceeds, which is drawn on an account at Mellon Bank in Pittsburgh,

Pennsylvania.   Further, when CitiFinancial Corporation, LLC makes a loan to a customer,

including Alabama customers, the CitiFinancial Corporation, LLC employee processing the

transaction inputs data into a nationwide computer system.

19.    Moreover, the March 10, 2003 loan transaction is governed by the Truth in

Lending Act ("TILA"), 15 U.S.C. § 1601 *et. seq.*, as well as numerous other federal consumer

lending laws.  Congress' power to regulate consumer lending transactions through TILA and other statutes derives from its power to regulate interstate commerce.  Therefore, the loan transaction was necessarily interstate in nature because it was regulated by Congress pursuant to Congress' interstate commerce powers.

20.    Further, the parties' arbitration agreement specifically states that "the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ 1 et seq., as amended." (*See* Arbitration Agreement, Ex. B.)

### IV.    THE FEDERAL ARBITRATION ACT APPLIES

21.    The FAA requires the enforcement of arbitration agreements where: (1) the arbitration agreement is part of a written contract which involves interstate commerce; and (2) the language of the arbitration provision covers the claims asserted by the plaintiffs in their lawsuit.  By enacting the FAA, Congress declared a national policy in favor of arbitration by requiring courts to enforce arbitration agreements. *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220 (1987); *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).  The primary purpose of the enactment of the FAA was to reverse years of judicial hostility to arbitration agreements. *Shearson/American Exp.*, 482 U.S. 220; *Scherk v. Alberto-Culber Co.*, 417 U.S. 506 (1974).

22.    Section 4 of the FAA provides a mechanism by which federal district courts are empowered to enforce agreements to arbitrate, regardless of where the lawsuit between the parties is pending.  Section 4 provides as follows:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the

controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The Court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the Court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the agreement or the failure, neglect, or refusal to perform the same be an issue, the Court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the Court shall hear and determine such issue. When such an issue is raised, the party alleged to be in default may, except in cases of admiralty, or on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the Court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the Court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

9 U.S.C. § 4.

23.    Section 4 specifically contemplates that parties, such as CitiFinancial, Inc., which are aggrieved by another party's failure to arbitrate under a written agreement, may file an original petition in a United States District Court to compel such party to arbitrate all of such parties' claims. And, importantly, the United States District Courts may not abstain from hearing this petition to compel arbitration. *See Moses H. Cone*, 460 U.S. 1; *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999); *Metropolitan Life v. Lockette*, 155 F.3d 1339 (11th Cir. 1998); *TranSouth Fin. Corp v. Bell*, 149 F.3d 1292 (11th Cir. 1998); *First Franklin Fin. Corp. v. McCollum*, 144 F.3d 1362 (11th Cir. 1998); *Snap-on Tools, Inc. v. Mason*, 18 F.3d 1261 (5th Cir. 1994).

**A.**    **There Is A Written Agreement To Arbitrate.**

24.    Based on the foregoing averments, it is clear that there is a written agreement to arbitrate.

**B.**    **Interstate Commerce Is Involved.**

25.    Also based on the foregoing averments, it is equally clear that the March 10, 2003 loan transaction involved interstate commerce.

**C.**    **The Scope Of The Arbitration Agreement Covers The Claims Asserted In The Underlying Action.**

26.    In addition to the existence of a written arbitration agreement and a transaction involving interstate commerce, there is no question that the scope of the arbitration agreement encompasses the claims Stokes asserts in the Underlying Action.

27.    Stokes asserts claims against one of CitiFinancial Corporation, LLC's affiliates (CitiFinancial, Inc.) and its employees (Duncan). Stokes' claims in the Underlying Action are for defamation, fraud, negligent misrepresentation and intentional infliction of emotional distress based upon CitiFinancial, Inc.'s alleged misrepresentation, improper credit reporting and collection activities associated with a loan Stokes obtained from CitiFinancial, Inc. - i.e., claims regarding "[a]ny act . . by . . . Us," "[f]raud or misrepresentation," as well as regarding "[a]ny dispute about . . . collecting, or enforcing a Credit Transaction" -- which are specifically encompassed by the parties' arbitration agreement. As such, there is no doubt that the claims Stokes asserts in the Underlying Action are encompassed in the scope of the March 10, 2003 arbitration agreement. As such, Plaintiff's Petition to Compel Arbitration is due to be granted.

**V.**    **PRAYER FOR RELIEF**

**WHEREFORE,** CitiFinancial, Inc. requests that the Court enter an Order in its favor, pursuant to Section 4 of the FAA, compelling arbitration of Stokes' claims in the Underlying

Action, in accordance with the parties' arbitration agreement. CitiFinancial, Inc. further requests that, pursuant to Section 3 of the FAA, the Court enter an Order enjoining Stokes from prosecuting all claims in the Underlying Action, pursuant to 28 U.S.C. § 2283, to protect and effectuate this Court's judgment. In addition, CitiFinancial, Inc. requests that the Court enter an Order staying all litigation of the Underlying Action, pursuant to 9 U.S.C. § 3 and 28 U.S.C. § 1651(a), pending the arbitration of Stokes' claims.

Dated this the __17th__ day of January, 2007.

Respectfully submitted,

_____

Reid S. Manley(MAN039)
Alan D. Leeth (LEE038)

Attorneys for Plaintiff
CITIFINANCIAL, INC.

OF COUNSEL:

BURR & FORMAN LLP
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## TO BE SERVED BY CERTIFIED MAIL

'IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

BROOKA STOKES                                    )
                                                 )
       Plaintiff,                                )
                                                 )
vs,                                              )       CV 2006- 741
                                                 )
CITIFINANCIAL a/k/a                              )
WASHINGTON MUTUAL FINANCE;                       )
GLENDA DUNCAN; and A, B, C, and/or D             )
being those persons, firms, corporations,        )
partnerships, or other entities responsible for  )
failure to satisfy the debt upon payment by      )
the Plaintiff; E, F, and/or G and those persons, )
firms, corporations, partnerships, or other      )
entities responsible for notifying any and all   )
Credit Bureaus of the existence of the debt      )
which had been paid; G, H, and/or I and those    )
parties responsible for the acts complained of   )
herein, whose identities are otherwise unknown,  )
but who will be added by amendment when          )
ascertained,                                     )
                                                 )
       Defendants.                               )

FILED

NOV 16 2006

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

**COMPLAINT**

Before September 27, 2004, the Plaintiff borrowed a sum of money from the Defendant

Prior to said date of September 27, 2004, the Plaintiff, Brooka Stokes, paid back all sums

borrowed from the Defendant and owed them no debt.  On or about September 27, 2004, the

Defendant, Citifinancial a/k/a Washington Mutual Finance, filed a suit in the District Court of

Lee County, Alabama, Small Claims Division, Case No. SM-04-1513 alleging that Brooka

Stokes owed to the Defendant, Citifinancial, a/k/a Washington Mutual Finance, the sum of

$936.74.  Brooka Stokes entered an appearance in the case denying the debt and alleging that

the debt had been paid.  Nevertheless, the case was set for trial on November 18, 2004 in the

Small Claims Court of Lee County, Alabama.  At the trial on the matter, Citifinancial, a/k/a

Washington Mutual Finance was represented by an employee of Citifinancial.  At the trial of

the matter, the payment of the debt by Mrs. Stokes was proved to the Court and the Court

entered judgment for Brooka Stokes for $350 on her counterclaim.  The decision of the Court



EXHIBIT

A

was entered in open Court and the employee of the Defendant was told of the fact that judgment was entered for Brooka Stokes and against the Defendant, Citifinancial, a/k/a Washington Mutual Finance. The said Citifinancial, a/k/a Washington Mutual Finance was notified in open court of the fact that judgment was rendered against it as previously alleged. The representative of Citifinancial, a/k/a Washington Mutual Finance is believed to be Glenda Duncan or a manager of Citifinancial, a/k/a Washington Mutual Finance. The pleadings in the case were signed by a person believed to be Glenda Duncan. Citifinancial, a/k/a Washington Mutual Finance did not appeal the judgment.

In spite of the rendering of the judgment in favor of Brooka Stokes and against Citifinancial, a/k/a Washington Mutual Finance, Citifinancial, a/k/a Washington Mutual Finance takes the position that the debt was and is still owed and that the burden is upon Brooka Stokes to show that she had paid the debt although the evidence was introduced at the time of the trial showing the debt had been paid.

After the date of November 18, 2004, said Citifinancial, a/k/a Washington Mutual Finance, continued to harass Brooka Stokes by letters and by telephone calls without regard to the fact that the case had been terminated by a judgment in favor of Brooka Stokes.

During the summer of 2006, Brooka Stokes learned that Citifinancial, a/k/a Washington Mutual Finance had reported to the Credit Bureau that Brooka Stokes still owed the debt, that she had "skipped" the payment of the debt. The allegation to the Credit Bureau has caused Mrs. Stokes difficulty in obtaining loans and the constant telephone calling and letters have caused her grievous mental pain and suffering. Her credit rating has been lessened and it is difficult to obtain a required loan and other business relationships.

## COUNT ONE

The Plaintiff adopts and re-alleges the language above in Paragraph One of the Complaint. On or after November 18, 2004, the Defendants slandered the Plaintiff by publishing a false and defamatory statement of and concerning the Plaintiff, that is, that Mrs. Stokes had not paid the debt to Citifinancial, a/k/a Washington Mutual Finance, and in fact had "skipped". The Defendants have not paid the judgment against them.

. The Plaintiff was damaged by such false and defamatory statements as follows: She suffered grievous mental and physical suffering, and in addition she found it difficult to borrow money because of the false allegations made by the Defendant.

. The Plaintiff claims punitive damages of the Defendants because Defendant published said statement with malice and with knowledge of its falsity or with gross and reckless disregard of its falsity.

THEREFORE, Mrs. Brooka Stokes, the Plaintiff, demands judgment against the Defendants in a sum to be assessed by a jury.

## COUNT TWO

The Plaintiff re-alleges the facts set forth above and incorporates them into this Count and adds thereto:

The Defendant, Citifinancial, a/k/a Washington Mutual Finance's representation to the credit bureau and to Mrs. Stokes were false and the said Defendants without knowledge of the true facts grossly misrepresented the facts intending the Plaintiff, Brooka Stokes to be coerced into paying a debt she did not owe and notified other potential lenders that Mrs. Stokes did not pay her debts and in fact "skipped".

WHEREFORE THE PREMISES CONSIDERED, the Plaintiff, Mrs. Brooka Stokes, demands both compensatory and punitive damages from the Defendants.

## COUNT THREE

The Plaintiff, Brooka Stokes, readopts the facts set forth above and incorporates them in this Count and adds thereto:

The misrepresented facts were false and made by the Defendants by mistake but with the intention that the Plaintiff should rely on them. As a proximate result of the fraud, the Plaintiff was caused to suffer injuries and damages as her credit was damaged and she was harassed by the Defendants, had difficulty in securing a loan, and was otherwise injured both physically and mentally. The Plaintiff, Brooka Stokes, demands punitive damages of the Defendants because of the intentional gross and reckless nature of the fraud.

### COUNT FOUR

The Plaintiff, Brooka Stokes, readopts the facts set forth above and incorporates them in this Count and adds thereto:

Said representations were false and Defendants knew they were false; or were false and Defendants, without knowledge of the true facts, recklessly misrepresented the facts; or were false and were made by the Defendant by mistake but with the intention that the Plaintiff should rely on them. Plaintiff claims compensatory and punitive damages of the Defendants because of the intentional or gross and reckless nature of the fraud.

WHEREFORE, Plaintiff demands judgment against the Defendants in a sum to be adjudged by a jury.

### COUNT FIVE

The Plaintiff, Brooka Stokes, readopts the facts set forth above and incorporates them in this Count and adds thereto:

The Defendants intentionally inflicted mental harm and pain on the Plaintiff, Brooka Stokes, by harassing her with telephone calls and numerous letters and recording a paid debt as still being due and alleging that Mrs. Stokes "skipped". Brooka Stokes was caused to spend and will spend sums of money for attorney fees and litigation expenses for which she claims the same from the Defendants.

### JURY DEMAND

The Plaintiff, BROOKA STOKES, demands trial by struck jury of all issues in this case.

Respectfully submitted this 16 day of ___Nov___, 2006.

JAMES T. GULLAGE (GUL007)
Attorney for the Plaintiff
Gullage & Tickal, LLP
511 Geneva Street
Opelika, AL 36801
334-737-3733
334-737-3766 fax

# Disclosure Statement,    te and Security Agreer    nt

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| BROOKA FERN STOKES<br>3301 OAKDALE DR<br>OPELIKA AL 36801 | CITIFINANCIAL<br>CORPORATION, LLC<br>3909-B PEPPERELL PARKWAY<br>OPELIKA AL 36801 | 133280<br>Date of Loan<br>03/10/2003 |

| ANNUAL PERCENTAGE RATE The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost Borrower. | Amount Financed The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 15.03 % | $ 21,482.97 | $ 15,215.99 | $ 36,698.96 |

Payment Schedule:

| Number of Payments | Amount of Payments * | When Payments Are Due |
|---|---|---|
| 30 | $ 249.55 | MONTHLY BEGINNING 04/14/2003 |
| 151 | $ 193.46 | MONTHLY BEGINNING 10/14/2005 |
|  | $ |  |
|  | $ |  |

*Paid in Full 7-9-04*

**Security:** If checked, Borrower has a security interest in:
- [ ] Motor Vehicle   [ ] Mobile Home
- [X] Real Property   [ ] Other:

**Late Charge:** If a payment is in default 10 days or more after the scheduled payment date, Borrower will be charged 5.0 % of the unpaid amount of the payment or $ 10.00 , whichever is more, but in no event to exceed $ 100.00 .

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Prepayment:** If Borrower pays off early, Borrower will not have to pay a penalty and will not be entitled to a refund of part of the finance charge.

\* Does not include any insurance premium.
Additional Information:

| Total amount of first month's payment including insurance premiums, if any. | PRINCIPAL AMOUNT | POINTS | DATE CHARGES BEGIN |
|---|---|---|---|
| $ 249.55 | $ 15,520.31 | $ 304.32 | 03/14/2003 |

**Required Insurance Disclosure:**
If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid. The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less. Such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender.

**Optional Insurance Disclosure:**
Borrower is not required to purchase optional insurance products, such as:  Credit Life, Credit Disability, Involuntary Unemployment Insurance or any other optional insurance products. Lender's decision to grant credit will not be affected by Borrower's decision to purchase or decline to purchase optional insurance.

Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly premium in addition to the monthly loan payment disclosed above.

Borrower should refer to the terms contained in the applicable certificate or policy of insurance issued for the exact description of benefits, exclusions and premium rates.

If Borrower purchases insurance, Borrower's monthly payment will include both the monthly loan payment disclosed above and the applicable monthly premiums.

I/We request the following insurance:

| Premium Due with the First Month's Loan Payment | First Year's Premium * | Insurance Type: |
|---|---|---|
| $NONE | $ | |
| $NONE | $ | |
| $NONE | $ | |

*Brooka Fern Stokes*    *3/10/03*
First Borrower's Signature    Date

Second Borrower's Signature    Date

(\* First year's premiums are calculated on the assumption that monthly loan payments are timely made). Accrued but unpaid premium, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay premiums may result in termination of insurance as described below.

**Termination of Insurance:**
Borrower may cancel any of the optional insurance products offered at any time. The optional insurance will terminate upon the earliest of the following occurrences:
(1) the Lender's receipt of Borrower's written request for termination;
(2) on the date when the sum of past due premiums equal or exceed four times the first month premium;
(3) termination pursuant to the provisions of the insurance certificate;
(4) payment in full of Borrower's Loan;
(5) death of Borrower.

TERMS: In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether ne or more.  If more than one Borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in ull. The word "Lender" refers to the Lender, whose name and address are shown above.

PROMISE TO PAY: In return for a loan that Borrower has received, Borrower promises to pay to the order of Lender the Principal amount shown bove, plus interest on the unpaid Principal balance from the Date Charges Begin shown above at the rate of interest of 17.99 % per annum, ender will compute interest on the unpaid Principal balance on a daily basis from the date charges begin until Borrower repays the loan. If Borrower oes not make sufficient or timely payments according to the payment schedule above, Borrower will incur greater interest charges on the loan. On the 30 month anniversary of the Date of Loan shown above, the rate of interest applicable to the remaining unpaid principal balance shall decrease to 12.23 % per annum.

Any amount shown above as Points has been paid by Borrower as Points. This amount is considered a prepaid charge and is in addition to interest alculated at the above Rate(s) of Interest. Any Points are earned prior to any other interest on the loan balance. In the event of prepayment of the loan, repaid Points will not be refundable to Borrower.

(Intentionally left blank)

**EXHIBIT B**

CitiFinancial Corporation, LLC

Borrower's Initials: BFS

BROOKA FERN STOKES                                    133280        03/10/2003

Principal and interest shall be payable in the monthly installments shown above, except that any appropriate adjustments will be made to the first and final payments, beginning on the first payment date shown above and continuing on the same day in each following month until paid in full unless this loan is subject to a call provision as indicated, in which event the final payment date may be accelerated. Upon the final payment date or the acceleration thereof, the entire outstanding balance of Principal and interest evidenced by this Disclosure Statement, Note and Security Agreement shall be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines.

Each payment shall be applied as follows: (1) monthly loan payments due (first to interest, then principal), (2) insurance premiums due, (3) unpaid interest to the date of payment, if any, then (4) principal. Lender may collect interest from and after maturity upon the unpaid Principal balance at the maximum rate permitted under the then applicable law or the rate of interest prevailing at the time of maturity under this Disclosure Statement, Note and Security Agreement.

PREPAYMENT: Borrower may prepay this loan in whole or in part at any time without penalty. However, upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment and the application of a Refund to the unpaid balance of the loan will not affect the amount or due date of subsequent scheduled payments on the loan, but may reduce the number of such payments.

SECURITY AGREEMENT:

A. To protect Lender if Borrower defaults on this loan, Borrower gives to Lender a security interest under the Uniform Commercial Code in any property for which a description is completed below and all parts and equipment now or later added to the property and any proceeds of the property, all of which will be called "Property". See below for additional terms applicable to this security interest.

1. Motor vehicle/mobile home:

| Make, No. Cylinders | Year/Model | Model No. Or Name | Body Type | Identification Number |
|---|---|---|---|---|
| | | | | |
| | | | | |

2. Other Property:

B. If this line is completed, the loan is secured by either a Deed of Trust or a Mortgage on real property located at
3301 OAKDALE DR                    OPELIKA AL 36801              . See either the Deed of Trust or the Mortgage for terms applicable to Lender's interest in Borrower's real property ("Property").

OWNERSHIP OF PROPERTY: Borrower represents that the Property is owned by Borrower free and clear of all liens and encumbrances except those of which Borrower has informed Lender in writing. Prior to any default, Borrower may keep and use the Property at Borrower's own risk, subject to the provisions of the Uniform Commercial Code. If the Property includes a motor vehicle or a mobile home, Borrower will, upon request, deliver the certificate of title to the motor vehicle or mobile home to Lender.

USE OF PROPERTY: Borrower will not sell, lease, encumber, or otherwise dispose of the Property without Lender's prior written consent. Borrower will keep the Property at Borrower's address (as shown on page 1) unless Lender has granted permission in writing for the Property to be located elsewhere. The Property will be used only in the state in which Borrower lives unless the Property is a motor vehicle, in which case it will be used outside the state only in the course of Borrower's normal use of the Property. Borrower will not use or permit the use of the Property for hire or for illegal purposes.

TAXES AND FEES: Borrower will pay all taxes, assessments, and other fees payable on the Property, this Disclosure Statement, Note and Security Agreement, or the loan. If Borrower fails to pay such amounts, Lender may pay such amounts for Borrower and the amounts paid by Lender will be added to the unpaid balance of the loan.

INSURANCE: If the original amount of the loan is $300.00 or more, not including insurance charges, and if the Property includes a motor vehicle or a mobile home worth $300.00 or more, Borrower will keep the motor vehicle or mobile home insured with collision and comprehensive casualty insurance, as required by Lender, protecting Lender and Borrower as their interests may appear, for the amount of the unpaid balance of the loan or the value of the motor vehicle or mobile home, whichever is less, until the loan is fully paid. If Borrower purchases any insurance at Lender's office, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan.

FINANCING STATEMENTS: Borrower will sign all financing statements, continuation statements, security interest filing statements, and similar documents with respect to the Property at Lender's request.

LATE CHARGE: Borrower understands that there is a charge for late payments as shown in the Disclosure Statement on page 1 of this Disclosure Statement, Note and Security Agreement.

NSF CHECKS: Lender may charge the greater of either a $ 20.00 fee or an amount equal to the actual charge by the depository institution if a check, draft, negotiable order of withdrawal or like instrument is not paid or is dishonored.

LOAN CHARGES: If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

DEFAULT: Borrower will be in default if:

1. Borrower does not make any scheduled payment on time;
2. Borrower is (or any other person puts Borrower) in bankruptcy, insolvency or receivership;
3. Any of the Borrower's creditors attempts by legal process to take and keep any property of Borrower, including the Property securing this loan;
4. Borrower fails to fulfill any promise made under this agreement; or
5. A default occurs under any Real Estate Mortgage or Deed of Trust which secures this loan or under any other mortgage or deed of trust or the real property.

If Borrower defaults, Lender may require Borrower to repay the entire unpaid balance and any accrued interest at once. If the debt is referred for collection to an attorney who is not Lender's employee, and the original amount financed is over $300.00, Borrower agrees to pay reasonable attorney's fees not to exceed 15% of the unpaid balance upon default, and court costs.

EFFECTS OF DEFAULT: If Borrower defaults, Lender will deliver the Property to Lender or, upon Lender's demand, assemble the Property and make it available to Lender at a reasonably convenient place. Lender may, without previous notice or demand and without legal process, peacefully enter any place where the Property is located and take possession of it.

The Property may be sold with notice at a private or public sale at a location chosen by Lender. At such a sale, Lender may purchase the Property. The proceeds of any sale, minus the expenses incurred in collecting on the debt, will be credited to the unpaid balance of Borrower's loan. The expenses that will be deducted from the proceeds of the sale include: the costs of taking, removing, holding, repairing, and selling the Property; fees (if the original amount of the loan is $300.00 or more) not to exceed 15% of the unpaid balance paid to an attorney who is not Lender's salaried employee; and the costs of removing any superior liens or claims on the Property. If Borrower has left other property in the repossessed Property, Lender may hold such property temporarily for Borrower without any responsibility or liability for the property.

Borrower's Initials: BFS

BROOKA FERN STOKES                                                        133280      03/10/2003

If the proceeds of sale are not sufficient to ____ / the unpaid balance, earned interest, and exp___s, subject to applicable Alabama law, Borrower agrees to pay the remaining amount upon demand.

Notice of the time and place of a public sale or notice of the time after which a private sale will occur is reasonable if mailed to the Borrower's address at least five days before the sale. The notice may be mailed to Borrower's last address shown on Lender's records.

LAW THAT APPLIES: Alabama law and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

OTHER RIGHTS: Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default in payment. Lender may waive any late charge or portion thereof without waiving its right to require a late charge with regard to any other late payment. Borrower agrees that Lender may extend time for payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.

Where the context requires, singular words may be read in the plural and plural words in the singular. References to the masculine gender may be read to apply to the feminine gender.

OTHER TERMS: Each Borrower under this Disclosure Statement, Note and Security Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Property securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Lender does not have to notify Borrower before instituting suit if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

Borrower, endorsers, sureties and guarantors, to the extent permitted by law, severally waive their right to require Lender to demand payment of amounts due, to give notice of amounts that have not been paid, to receive notice of any extensions of time to pay which Lender allows to any Borrower and to require Lender to show particular diligence in bringing suit against anyone responsible for repayment of this loan, and additionally, waive benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any Property securing this loan and waive the benefit of valuation and appraisement.

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed and Arbitration Agreement is unenforceable, this will not make any other part unenforceable.

REFINANCING: The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

ARBITRATION. Borrower, Non-Obligor(s) (if any) and Lender have entered into a separate Arbitration Agreement on this date, the terms of which are incorporated and made a part of this Disclosure Statement, Note and Security Agreement by this reference.

The following notice applies only if this box is checked. ☐

## NOTICE

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed and Arbitration Agreement; and authorizes the disbursements stated therein.

**CAUTION—IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.**

WITNESSES:                                          SIGNED:

_Dana R. McCreigh_                                _Brooka Fern Stokes_                    (Seal)
                                                  BROOKA FERN STOKES              -Borrower
_____                           _____         (Seal)
                                                                                 -Borrower
                                                  _____         (Seal)
                                                                                 -Borrower

                                                  CITIFINANCIAL CORPORATION, LLC

_____                           By: _Renee Both Am_
                                                  (Name and Title)      03/10/2003 17:12:10

SECURITY INTEREST OF NONOBLIGOR: Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

_____          (Seal)          _____          (Seal)
Signature                        Date            Signature                        Date

## ARBITRATION AGREEMENT

THIS ARBITRATION AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND CERTAIN OTHER PERSONS ON THE ONE HAND AND LENDER AND CERTAIN OTHER PERSONS AND ENTITIES ON THE OTHER HAND, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.

| BORROWER(S) | LENDER |
|---|---|
| BROOKA FERN STOKES<br><br>3301 OAKDALE DR<br>OPELIKA AL 36801 | CITIFINANCIAL<br>CORPORATION, LLC<br>3909-B PEPPERELL PARKWAY<br>OPELIKA AL 36801 |
| Date of Note   03/10/2003 | Account Number   133280 |

In consideration of Lender making the extension of credit described in the instrument evidencing your loan ("Note") and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.

Definitions for Arbitration Agreement. As used in this Arbitration Agreement ("Agreement"), the following definitions will apply:
"You" or "Your" means any or all of Borrower(s) listed above and Non-Obligor(s) who execute the Note, and their heirs, survivors, assigns, and representatives.
"We" or "Us" or "Our" means the Lender under the Note listed above, its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective employees, agents, directors, and officers (whether acting in their corporate or individual capacity).
"Credit Transaction" means any one or more past, present, or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.
"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to:
- The Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

"Rules" means the then applicable rules and procedures that govern consumer disputes for the chosen "Administrator" (as defined below).

Agreement to Arbitrate Claims. Upon written request by either party that is submitted according to the Rules for arbitration, any Claim, except those specified below in this Agreement, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the then applicable Rules of the chosen "Administrator", and (iii) this Agreement, unless We and You both agree in writing to forgo arbitration. The terms of this Agreement shall control over any inconsistency between the Rules of the Administrator and this Agreement. The party initiating the arbitration must choose one of the three following arbitration firms ("Administrator") and follow the Rules for initiating and pursuing an arbitration:

| JAMS | American Arbitration Association | National Arbitration Forum |
|---|---|---|
| 1920 Main Street, Suite 300 | 335 Madison Avenue, Floor 10 | P.O. Box 50191 |
| Irvine, CA 92610 | New York, NY 10017-4605 | Minneapolis, MN 55405 |
| www.jamsadr.com | www.adr.org | www.arbitration-forum.com |

You may obtain a copy of the Rules and a form of demand for arbitration for each Administrator by contacting the Administrator or by accessing the Administrator's internet site. We or You may bring an action, including a summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claim pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if a Claim is part of a lawsuit, up until the entry of a final judgment. You and We also agree to submit to final, binding arbitration not only all Claims, but also any claim or dispute You or We have against (i) all persons and/or entities involved with any Credit Transaction or any other matter relating to this Disclosure Statement, Note and Security Agreement, (ii) all persons and/or entities who signed or executed any document relating to any Credit Transaction or Claim, and (iii) all persons and/or entities who may be jointly or severally liable to either You or any of Us regarding any Claim.

Judgment. Judgment upon any arbitration award may be entered in any court having jurisdiction. If timely requested by either party, the arbitrator shall provide a brief written statement of the reasons for any award.

Claims Excluded from Arbitration. Neither You nor We may require the other to arbitrate the following types of matters:
- Any action to the extent necessary to obtain a judicial order for the purpose of (a) effecting a foreclosure or transferring title being foreclosed, or permitting exercise of extra-judicial or self-help repossession under applicable law, with respect to an interest in property, or (b) establishing, perfecting or clearing title, with respect to an interest in property.
- Any Claim where all parties collectively (including multiple named parties) seek monetary relief in the aggregate of $15,000.00 or less in total relief, including but not limited to compensatory, statutory and punitive damages, restitution, rescission, disgorgement, costs and fees (including attorneys' fees); or any Claim brought in and subject to the jurisdiction of a small claims court, so long as such matter remains in such court and advances only as an individual, non-class Claim. Any Claims asserted on behalf of a putative class of persons, will, for purposes of this exclusion, be deemed to exceed $15,000.00. In the event that any party fails to specify the amount being sought for any relief, or any form or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000.00, unless the matter remains in and subject to the jurisdiction of the small claims court.
Participating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim.

Additional Terms.
  Administration of Arbitration. Arbitration shall be administered by the chosen Administrator, but if said Administrator is unable or unwilling to administer the arbitration, then an alternate Administrator shall be chosen by the party initiating the arbitration and that Administrator shall administer any arbitration required under this Agreement pursuant to its Rules. The arbitrator shall make his or her decision in accordance with the applicable law, and shall be empowered to award any damages or other relief provided for under the applicable law.
  Place of Arbitration. The arbitration shall be conducted in the county of Your residence, unless all parties agree to another location.
  Appeal. Either You or We may appeal the arbitrator's award in accordance with the then applicable Optional Appeals Procedures of JAMS or in accordance with procedures otherwise agreed to by You and Us, and the award may be subject to judicial review on the grounds stated in 9 U.S.C. § 10.
  No Class Actions/No Joinder of Parties. You agree that any arbitration proceeding will only consider Your Claims. Claims by or on behalf of other borrowers will not be arbitrated in any proceeding that is considering Your or Our Claims. Because You have agreed to arbitrate all Claims, You may not serve as a class representative or participate as a class member in a putative class action against any party entitled to compel arbitration under this Agreement.
  Depositions. After a demand for arbitration is made, You and We may conduct a limited number of depositions by mutual agreement. Any disagreements concerning the taking of depositions will be resolved by the arbitrator.

Borrower's Initials: BJS

21228-2  3/2003                    Original (Branch)        Copy  (Customer)

Costs. Unless the Rules of the Administ... .equire allocation more beneficial to You, the ... of any arbitration proceeding shall be divided as follows:

- The party making demand upon the Administrator for arbitration shall pay to the Administrator the filing fee required by the Rules when the demand is made, except that We will pay the amount of the filing fee in excess of the amount of the fee that would be required for You to file a lawsuit in Your jurisdiction.  In addition, We will pay to the Administrator all other administrative costs of the arbitration proceeding.  However, the arbitrator may award Us, in accordance with Rules, the excess amount of any such filing fee and any other arbitration administrative costs We incur if the arbitrator determines that the Claim was made in bad faith or lacks any justification on Your part.  Despite our agreement to pay costs and fees described above, you have the option to pay Your share of filing fees and administrative costs consistent with the applicable Rules.
- Each party shall pay his/her own attorney, expert, and witness fees and expenses, unless otherwise required by law or by other terms of the Note.

**Interpretation.** This Agreement is governed by federal law and by the laws of the state where the closing of the Credit Transaction took place, but only to the extent that such state laws are consistent or compatible with federal law.
**Interpretation.**  Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of this Agreement under which arbitration is sought, shall be submitted to and ruled on by the arbitrator, unless the relevant law requires that a court of competent jurisdiction make such determinations.  The arbitrator has the authority to determine jurisdiction and arbitrability prior to conducting a full hearing on the merits.
**Severability.**  If the arbitrator or any court determines that one or more terms of this Agreement or the Rules are unenforceable, or would make this Agreement unenforceable, only such terms(s) shall be deemed unenforceable and shall be deemed stricken from this Agreement, but such determination shall not impair or affect the enforceability of the other terms of this Agreement or the Rules.
**Survival.**  This Agreement applies even if the Note has been paid in full, charged off by us, or discharged in bankruptcy.

**Special Acknowledgments.** You understand and acknowledge by signing Your name to this Agreement that (i) a court and/or jury will not hear or decide any Claim governed by this Agreement, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§1 et seq., as amended, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, and (iv) rights to appeal an arbitration award are very limited.

**READ THE ABOVE ARBITRATION AGREEMENT CAREFULLY.  IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION.  BY SIGNING BELOW, YOU AGREE TO THE TERMS CONTAINED IN THIS AGREEMENT AND ACKNOWLEDGE THAT THIS DOCUMENT DID NOT CONTAIN ANY BLANK SPACES WHEN YOU SIGNED IT.**

The Arbitration Agreement is executed as of the "Date of Note" written above.

_Brooka Fern Stokes_
BROOKA FERN STOKES                                                Borrower

_____
Non-Obligor

By: _Renee Booth, AM_
(Lender Name and Title)                                            Borrower